## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Kelsey L. Hopkins, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION FOR SUMMARY** |
| Plaintiff, | ) | **JUDGMENT, GRANTING** |
| | ) | **COMMISSIONER'S MOTION FOR** |
| v. | ) | **SUMMARY JUDGMENT, AND** |
| | ) | **AFFIRMING COMMISSIONER'S** |
| Kilolo Kijakazi, Acting Commissioner of | ) | **DECISION** |
| the Social Security Administration, | ) | |
| | ) | |
| | ) | Case No.: 1:22-cv-00087 |
| Defendant. | ) | |

Plaintiff, Kelsey L. Hopkins ("Hopkins" or "claimant"), seeks judicial review of Defendant Kilolo Kijakazi's, Acting Commissioner of the Social Security Administration ("Commissioner"), denial of her application for child's insurance benefits and Title XVI supplemental security income ("SSI"). This court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Before the court are competing motions for summary judgment filed by Hopkins and the Commissioner. (Doc. Nos. 11 and 13).

### I.    BACKGROUND

Hopkins filed an application for supplemental security income under Title XVI of the Social Security Act and for child's insurance benefits based on disability on July 15, 2019.  (Doc. No. 9-2 at 27). Both applications were denied on December 20, 2019. (Doc. No. 9-5 at 2-10). Hopkins completed a request for reconsideration on February 11, 2020, and was denied again on May 13, 2020. (*Id.* at 13-21). Hopkins subsequently requested a hearing be held in front of an Administrative Law Judge ("ALJ") on June 16, 2020. (*Id.* at 22). A hearing was held on March 16, 2021, before ALJ Christel Ambuehl. (Doc. No. 9-2 at 27). Hopkins was represented at the hearing by attorney Paul Temanson. (*Id.*). Vocational expert Donna Toogood appeared via electronic

means. (*Id.*). On May 27, 2021, ALJ Ambuehl issued a decision finding Hopkins not disabled. (*Id.* at 48).

Hopkins filed a request for review of the ALJ's decision to the Appeals Council on June 21, 2021. (Doc. No. 9-5 at 77-79). The Appeals Council denied the request for review on March 24, 2022, rendering the ALJ's decision the final decision of the Commissioner. (Doc. No. 9-2 at 2-8). On May 19, 2022, Hopkins filed a Complaint in this court seeking review of the Commissioner's decision. (Doc. No. 1).

At the time of her alleged onset date, Hopkins was 18 years of age. (Doc. No. 14 at 2). Hopkins had attained 22 years of age by the time of the hearing before the ALJ. (*Id.*; Doc. No. 9-3 at 9).

## II.   LEGAL STANDARD

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, children's insurance benefits may be provided to a claimant who is 18 years old or older and has a disability that began before attaining the age of 22. 20 C.F.R. § 404.350(a)(5).

When making a disability determination, the Commissioner utilizes a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Under the first step, the Commissioner must consider a claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(1), 416(a)(4)(i). An individual is not disabled if they have engaged in substantial gainful activity.

Second, the Commissioner "determines whether the claimant has a severe impairment that significantly limits [the claimant's] physical or mental ability to do basic work activities." *Igo v. Colvin*, 839 F.3d 724, 727-28 (8th Cir. 2016) (quoting 20 C.F.R. § 404.1520(c)) (internal quotations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), (c). Basic work activities mean "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 416.922(b), 404.1522(b). Basic work activities include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 416.922(b), 404.1522(b).

Third, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has an impairment or combination of impairments which meet or are equal to the criteria of the listed impairments [in 20 C.F.R. pt. 404, Subpt. P, App. 1] the claimant will be presumed disabled. *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "To meet a listing, a claimant must show that he or she meets all of the criteria for the listed

impairment." *Dols*, 931 F.3d at 744 (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)).

Fourth, the Commissioner considers residual functional capacity and past relevant work of the claimant. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Residual functional capacity is defined as "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant is not disabled if they have residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Lastly, the Commissioner considers the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant may make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant may do other work, they are not disabled. *Id.* To support a finding that the claimant is not disabled, there must be a demonstration of work that the claimant may do which exists in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

Upon reviewing the record, the court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for hearing. 42 U.S.C. § 405(g). To affirm, the court must find substantial evidence appearing in the record as a whole supports the Commissioner's decision. *Id.*; *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989); *Emerson v. Kijakazi*, No. 1:18-CR-146, 2022 WL 17403569, at *6 (D.N.D. Dec. 2, 2022).

"Substantial evidence is less than a preponderance of the evidence and is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (internal quotations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."

*Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)); *see Igo*, 839 F.3d at 728.

The court must consider evidence which supports the Commissioner's decision, as well as that which detracts from it. *Charette v. Saul*, No. 3:18-CV-254, 2019 WL 7605835, at *2 (D.N.D. Nov. 22, 2019); *see Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019). The court will not disturb the ALJ's decision unless it lies outside the available "zone of choice." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citing *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). An ALJ's decision is not outside the "zone of choice" simply because the court may have reached a different conclusion if it were the initial fact finder. *Id.*

## III.   DISCUSSION

The ALJ applied the five-step test to determine whether Hopkins was disabled. First, the ALJ found that Hopkins had not engaged in substantial gainful activity since December 12, 2016, the alleged onset date. (Doc. No. 9-2 at 30). The ALJ also noted Hopkins had not attained age 22 as of December 12, 2016. (*Id.*). Second, the ALJ concluded Hopkins had the following severe impairments: fibromyalgia; diabetes; obesity; carpal tunnel syndrome; migraine headaches; major depressive disorder; generalized anxiety disorder; and personality disorder. (*Id.*). Third, the ALJ found Hopkins did not have an impairment or combination of impairments meeting or medically equal to the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 31). Fourth, the ALJ determined Hopkins had the residual functional capacity to perform medium work. (*Id.* at 34). Specifically, the ALJ noted,

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is able to lift and carry 50 pounds occasionally and 25 pounds frequently; stand or walk about 6 hours of 8; sit about 6 hours of 8; frequently push and pull bilaterally; frequently climb ramps and stairs; frequently climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel, bilaterally; and

> have occasional exposure to loud noise and unprotected heights and dangerous moving machinery. The claimant is able to understand, remember and carry out with acceptable persistence and pace simple tasks, defined as tasks that can be learned in thirty days on the job. She should not work in an environment that is stringently production or quota-based, and thus may not perform fast-paced assembly line type of work but can meet production requirements that allow her to sustain a flexible and goal oriented pace. She is able to manage stresses in routine simple work. She is able to maintain pace and persistence for the kinds of work identified. The claimant is able to interact occasionally with coworkers and the public and is not limited in her interactions with supervisors.

(*Id.*). The ALJ also found that Hopkins had no past relevant work. (*Id.* at 47). Fifth, the ALJ considered Hopkins' age, education, work experience, and residual functional capacity, determining there were a significant number of jobs in the national economy available for Hopkins to perform. (*Id.*).

Hopkins now alleges that the ALJ (1) erred in the evaluation of the evidence, and (2) erred as a matter of law.

### A. Primary Headache Disorder

Hopkins argues the ALJ's decision should be reversed as the ALJ failed to properly evaluate her headache disorder. (Doc. No. 12 at 5). Specifically, Hopkins alleges the ALJ states how a headache disorder is evaluated but fails to do an evaluation or consider the overall effects of the primary headache disorder on Hopkins' functioning results. (*Id.*).

While the ALJ found the migraine headaches severe at step two of the analysis (Doc. No. 9-2 at 30), it did not meet the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 31). In making this determination, the ALJ evaluated whether primary headache disorder medically equaled listing 11.02 (epilepsy). (*Id.* at 32). A person with primary headache disorder may exhibit signs and limitations under listing 11.02 (paragraph B or D for dyscognitive seizures). (*Id.*). The ALJ noted that in an evaluation of whether primary headache disorder is equal in severity and duration to the criteria in 11.02B, they must consider:

a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

(*Id.*). The ALJ also provided that under criteria 11.02D, the ALJ considers the same factors as 11.02B. (*Id.*). The overall effects of primary headache disorder on functioning results are also considered. (*Id.*).

While the ALJ considered the steps to evaluate whether the primary headache disorder medically equals a listing, the ALJ did not conduct an analysis under step three. "There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003); *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001). Moreover, "[a]lthough it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion…." *Pepper ex rel. Gardner*, 342 F.3d at 855.

The ALJ relied on substantial evidence in the record, including medical evidence, to determine Hopkins did not meet or medically equal the definition. The ALJ noted Hopkin's migraine symptoms throughout the decision. Notably, the ALJ found that Hopkins has experienced migraines one to two times per week since middle school. (Doc. No. 9-2 at 35, 43). They result in intense pain, loss of balance, sensitivity to light and sounds, nausea, and vomiting. (*Id.* at 35). Hopkins takes medication for her migraines, and when one occurs, she closes the blinds and curtains, keeps the room cool, and sleeps off her migraines. (*Id.*). However, medical records also

reported that migraine medications were beneficial and generally effective. (Doc. No. 9-2 at 41, 43-44, 46). "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002); *see Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). Therefore, the court finds the ALJ properly evaluated Hopkins' headache disorder and the findings are supported by substantial evidence in the record.

### B. Assessment and Interrelationship of Hopkins' Impairments

Hopkins alleges the ALJ did not assess all her severe impairments and the interrelationship of those severe impairments. (Doc. No. 12 at 6). Hopkins emphasized the findings of provider Lea Johnson ("Ms. Johnson") from Trinity Medical Group Behavioral Health Services. Ms. Johnson noted the combination of Hopkins' health issues along with her mental health symptoms have caused difficulty in daily planning and predicting how she will feel. (Doc. No. 9-3 at 3).[1] While Hopkins provides that Ms. Johnson's records reflect the continuity of care and consistency of symptoms across time, and the ALJ fails to consider such a relationship between Hopkins' impairments in its decision, the court is inclined to disagree.

The ALJ is required to assess the "combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c). In its review of Hopkins' impairments, the ALJ remarked that "[t]he claimant does not have an impairment or *combination* of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Doc. No. 9-2 at 31) (emphasis added). The ALJ also acknowledges a "careful consideration of the entire record," in the determination that Hopkins has the residual functional

---

[1] The court notes that two letters were not submitted to the ALJ but were provided to the Appeals Council after the ALJ's decision. Upon its denial the Appeals Council indicated: "You submitted letters from Lea Johnson, LCSW, dated May 12, 2017, and July 12, 2021 (2 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (Doc. No. 9-2 at 3).

capacity to perform medium work. (*Id.* at 34). "These statements are sufficient under Eight Circuit precedent to establish that the ALJ properly considered the combined effect of a claimant's impairments." *Fletcher v. Colvin*, No. 6:13-CV-06059, 2014 WL 2932302, at \*5 (W.D. Ark. June 30, 2014); *see Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) ("holding that statements such as 'the evidence *as a whole* does not show that the claimant's *symptoms*… preclude his past work as a janitor' and '[t]he claimant's *impairments* do not prevent him from preforming janitorial work…' sufficiently establish that the ALJ properly considered the combined effects of the plaintiff's impairments").

Moreover, throughout the decision the ALJ acknowledged the fluctuating nature of Hopkins' impairments and their impact on Hopkins as time passed. The medical records reflect changes in Hopkins' symptomology, with the decision addressing such fluctuations. Notably, the decision identified that Hopkins reported fluctuating moods, and increased emotional distress. (Doc. No. 9-2 at 38-39). However, the findings also report a denial of depression, anxiety, and panic attacks as medication adequately managed her symptoms. (Doc. No. 9-2 at 42). Subsequent medical records also report Hopkins denied symptoms of depression and a reported good mood. (*Id.* at 44). Hopkins' clinician also noted that fibromyalgia, migraine headaches, depression, anxiety, and ADD were controlled. (*Id.*). As previously noted by the court, impairments which can be controlled by treatment or medication are not considered disabling. *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993). Accordingly, the ALJ properly considered the combined effects of Hopkins' impairments and the interrelationship of those impairments.

### C.  Residual Functional Capacity

Hopkins' argues that the ALJ did not consider how her weekly headaches could impact her capacity for work-related activities, provided that having between three to five unplanned workplace absences precludes competitive employment. (Doc. No. 12 at 6).

A claimant's RFC is determined "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [their] limitations." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). The ALJ's RFC is not required to be supported by specific medical opinion, nor is the ALJ limited to considering only medical evidence. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022).

The ALJ determined Hopkins' residual functional capacity, finding she was capable of performing medium work; could lift and carry 50 pounds occasionally and 25 pounds frequently; could stand or walk 6 of 8 hours; sit 6 of 8 hours; could frequently push and pull bilaterally; frequently climb ramps and stairs; frequently climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel, bilaterally; and could experience occasional exposure to loud noise, unprotected heights and dangerous moving machinery. Hopkins also had the ability to understand, remember and carry out with acceptable persistence and pace simple tasks, which could be learned in thirty days on the job. She should not work in stringently production or quota-based environments; thus, she should not perform fast-paced assembly line work but could meet production requirements that allow a sustainable flexible and goal-oriented pace. Hopkins could manage stress in routine simple work and maintain pace and persistence for the identified work. She could interact occasionally with coworkers and the public and was not limited in interactions with supervisors.

While Hopkins does not believe the ALJ adequately provides for her work-related activities, the ALJ considered medical opinions in the record. Notably, the ALJ found persuasive a medical opinion which noted that Hopkins' managed her migraines with medication and limited daily stress. (Doc. No. 9-4 at 14). The migraines were under good control. (*Id.*). The ALJ also found persuasive the notation that "the claimant did not have limitations in understanding and memory; was not significantly limited or moderately limited in areas of sustained concentration and persistence; was not significantly limited or moderately limited in described areas of social interaction; and was not significantly limited or moderately limited in described areas of adaption." (Doc. No. 9-2 at 45). The ALJ noted findings of providers that Hopkins' memory was assessed as intact, records evidence her ability to follow complex commands and provide detailed history, and she had good understanding. (*Id.*). The ALJ likewise determined a moderate limitation was appropriate rather than the suggested mild limitation based on the evidence in the record. (*Id.*). Accordingly, the court concludes the ALJ adequately considered the impact on Hopkins' capacity for work activities, as substantial evidence in the record supports the RFC.

### D. Subjective Complaints

Hopkins argues the ALJ's reasoning for discounting her subjective complaints is not supported by the record as a whole. (Doc. No. 12 at 6). In response, the Commissioner maintains there is substantial evidence to support the ALJ's decision to discount Hopkins' subjective symptoms. (Doc. No. 14 at 4).

When evaluating subjective complaints, the ALJ is required to assess the claimant's credibility in light of objective medical evidence and evidence relating to "the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; function restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work

history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). Each factor need not be explicitly addressed by the ALJ, rather the factors may be considered and acknowledged prior to the ALJ discounting the claimant's subjective complaints. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); *see also Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001); *see Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

In general, "a person's ability to engage in personal activities such as cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in a substantial gainful activity." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000)). "In evaluating a claimant's RFC, consideration should be given to the quality of the daily activities and the ability to sustain activities, interests, and relate to others *over a period of time* and the frequency, appropriateness, and independence of the activities must also be considered." *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007); (quoting *Reed v. Barnhart*, 399 F.3d 917, 922 (8th Cir. 2005)) (internal quotations and citations omitted) (emphasis in original).

Hopkins testified to the ability to drive, albeit with anxiety, and indicated her mother cooks her meals, washes dishes, sweeps, vacuums, and dusts for her. (Doc. No. 9-3 at 10, 25). However, in a Third-Party Function Report,[2] Hopkins' mother reported she had the ability to help with chores such as unloading the dishwasher, folding and putting away laundry and mowing the lawn, caring

---

[2] In its decision, the ALJ noted that under current rules there is no requirement to "provide articulation for statements that are not provided by medical sources or that do not state what the claimant can do despite his impairments. (20 CFR 404.1513(a)(2)) and 416.920(a). Thus, the Third Party Function Report prepared by the claimant's mother, who is not a medical source, does not require articulation under the new medical evidence rules." (Doc. No. 9-2 at 46).

for and feeding her turtle, preparing meals such as sandwiches, microwavable and stovetop food, driving a vehicle, maintaining finances, and going to stores and appointments accompanied. (Doc. No. 9-7 at 48-55). In her Function Report, Hopkins also reported no issues with personal care, ability to care for her pet, capability to prepare meals such as sandwiches, frozen dinners, and soup a "couple times a week," participation in chores like dusting, organizing, and folding laundry, handling finances, and maintaining daily hobbies like reading, watching TV, playing video games and writing. (*Id.* at 56-63). "Acts with are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 2240 F.3d 1145, 1148 (8th Cir. 2001)) (internal quotation marks omitted); *see Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (concluding that "'daily activities [such] as getting up, eating, reading, cleaning the house, making the bed and doing the dishes with the help of [a spouse], making meals, visiting with friends, and occasionally shopping and running errands' are inconsistent with a claimant's subjective complaints of disabling pain"); *see also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010).

The record also reflects Hopkins participated in vocational rehabilitation. (Doc. No. 9-7 at 4). However, Hopkins failed to communicate with the vocational rehabilitation counselors upon moving for college, resulting in case closure. (*Id.* at 14-18).

Hopkins is also noted to have participated in college courses and have resided with roommates. However, while college initially went well, she withdrew from school, with a plan to take less courses the following semester. (Doc. No. 9-14 at 16, 22). She also reported initially coping with living with roommates but decided to move home instead of moving to Fargo, North Dakota with her friends. (*Id.* at 10). Moreover, Hopkins looked into applying for jobs and saving money before moving herself. (*Id.*). She also applied for jobs and participated in job interviews,

though she felt her parents pressured her to apply. (*Id.* at 3-4). "Absent any showing of deterioration, working after the onset of an impairment is some evidence of an ability to work." *Schultz v. Astrue*, 479 F.3d 979, 982-83 (8th Cir. 2007); *see Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005). Additionally, "[s]eeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain." *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001); *see Piepgras, v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996); *see also Lansford v. Barnhart*, 76 Fed.Appx. 109, 110 (8th Cir. 2003) (holding the ALJ properly discredited the claimant's subjective complaints in part due to his reported search for other work and receipt of unemployment benefits); *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995) (finding the ALJ properly discredited claimant's limitations as he attempted to return to work for his former company and applied for jobs both similar and unrelated to his previous employment).

The court is inclined to agree with the findings of the ALJ, concluding the ALJ properly evaluated the *Polaski* factors. As such, substantial evidence on the record as a whole supports the findings of the ALJ.

## IV.   CONCLUSION

For the reasons articulated above, the court is satisfied that substantial evidence in the record as a whole supports the ALJ's findings and the conclusion that Hopkins is not disabled. Accordingly, Hopkin's motion for summary judgment (Doc. No. 11) is **DENIED**, the Commissioner's motion for summary judgment (Doc. No. 13) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated this 28th day of August, 2024.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court